## DANA, receiver &c. *vs.* MUNRO.

There is a wide distinction between the liabilities of those who give notes to form the capital stock of a mutual insurance company and of those who give notes for premiums, after the stock is made up and the company brought into existence. While the former class are liable on their notes, irrespective of losses, the latter are liable only for the *pro rata* share of such losses, in common with all other available premium notes held by the company.

An individual taking a policy of insurance and giving his promissory note to the company, for the premium, cannot be made a stockholder, and liable for the full amount of the note, when he neither knows that he is assuming any such obligation, nor intends to assume it.

The agent of an insurance company about to be organized applied to the defendant's agent to insure the buildings of the defendant in the company, when it should be in a situation to do business; saying that it was not yet organized, but soon would be. Subsequently, after the company was authorized to receive applications, the request to insure was renewed, and acceded to by the defendant, who made an application, and gave a note for the premium; without any intimation being given that any obligation was

Dana *v.* Munro.

sought or intended other than that incurred by every person insuring in a mutual insurance company. *Held* that the note could not be treated as a stock note, and collected without any assessment.

APPEAL from a judgment entered on the report of a referee. The action was brought by the plaintiff as receiver of the Farmers' Insurance Company, of Oneida county, to recover the amount of a note given by the defendant to said company, a corporation duly created under the general laws relating to the incorporation of insurance companies, and which note was claimed by the receiver to be a stock note, and on which he claimed to recover without proving any assessment to have been made. The defendant insisted it was a note given as a premium note, and that no recovery could be had until an assessment had been duly made.

It was proved on the trial that in the spring of 1851 the defendant was owner of a block of stores in the village of Jordan, in the county of Onondaga. Silas Mann was agent of the Farmers' Insurance Company, above named, which at that time was not fully organized, but was in process of organization. Mann, as such agent, prior to June, 1851, applied to one Knowlton, agent of the defendant, to insure said stores in the company. After consultation with the defendant, Knowlton informed Mann that he would insure the stores in said company, and an application and note were prepared and signed by the defendant, in June, 1851, and the application was approved by the company July 1, 1851, and a policy issued, whereby the risk commenced on the 24th of June, 1851, and was to continue for one year.

· The note was in the words and figures following, viz :

" $320. For value received in policy No. 87, dated _____ 185__, issued by the Farmers' Insurance Company of Oneida county, ____ promise to pay the said company, or their treasurer for the time being, the sum of three hundred and twenty dollars, in such portions and at such time or times as the directors of said company may agreeably to their charter and by-laws require. · JOHN MUNRO."

This note, with others, was submitted by the company to the commissioners appointed by the comptroller pursuant to the provisions of the general law for the incorporation of insurance companies, as one of the capital stock notes of said company, and said commissioners thereupon gave the certificate required by said general law, and thereupon the company became incorporated.

Mann and Knowlton both testified to the making of the application to insure in said company, to Knowlton, and the assent of the defendant to insure, but they did not agree as to whether it was understood at the time of such application that the company was not incorporated.

It appeared by the evidence that Knowlton understood that the company was duly incorporated, at the time of the application, and that the proposition was to give the note as a premium note and not as a capital stock note. And it is not claimed by Mann that the note was applied for as a capital stock note. The company was authorized to commence business on or about the 26th of June, 1851.

The referee reported in favor of the plaintiff for the amount of the note and interest, and from the judgment entered upon his report the defendant appealed.

*W. Porter,* for the appellant.

*P. Gridley,* for the respondent.

*By the Court,* MULLIN, J. The Farmers' Insurance Company, of which the plaintiff is receiver, was organized under the general law for the incorporation of insurance companies, passed April 10, 1849. The charter prepared and filed in the comptroller's office, pursuant to the 3d section of that act, fixed the capital of the company at $100,000, with the right to increase it by adding, as I infer, $50,000 cash capital, pursuant to the 21st section of the general act. By § 4 of that act it was provided that it should

be lawful for persons associated for the purpose of organizing any company, after having published the notice and filed their declaration and charter in the comptroller's office, as required by § 3, to open books to receive propositions and enter into agreements to the extent and in the manner specified in § 5. That section provides that no company out of the counties of New York and Kings shall commence business until agreements have been entered into for insurance, the premiums on which shall amount to $100,000, and the notes received therefor shall be payable at the end of or within twelve months from date, which notes shall be considered part of the capital stock and shall be deemed valid, and shall be negotiable and collectible for the purpose of paying losses which may accrue, or otherwise.

The 11th section of said general act provides that the charter shall be submitted to the attorney general, and if approved by him, the comptroller is required to cause an examination to be made by himself or three disinterested persons appointed by him, who shall certify under oath that the company has received and is in the actual possession of the capital premiums, or engagements for insurance, as the case may be, to the full extent required by § 5. Copies of such certificate are then to be filed in the office of the secretary of state, who is then required to furnish the company with copies of the charter and certificates, which, on being filed in the office of the county clerk of the county in which the company is located, shall be their authority to commence business and issue policies.

By the 9th article of the charter of the company the capital was to be at least $100,000, consisting of premium notes and premiums received, and in addition thereto such sum as may be added under the provisions of the 2d article. The 2d article provided for adding to the capital $50,000 or more, to be managed separately from the mutual business of the company.

The 11th article provides that the directors may, in their

discretion, divide applications into two or more classes according to the degree of hazard, and the premium notes shall not in such case be assessed for the payment of any losses, except in the class to which they belong.

The court of appeals has held that the makers of notes given to form the capital of a company, under this law, are liable for the full amount of them, whether the pro rata share of the losses and expenses would equal or fall short of the amount of such note; that it is in the power of the directors to negotiate such notes; and that the holder may enforce payment, whether losses have or have not occurred. (*White* v. *Haight,* 16 *N. Y. Rep.* 310.)

There must be, I conclude, a wide distinction between the liabilities of those who give notes to form the capital stock and of those who give notes for premiums, after the stock is made up and the company brought into existence. While the former class are liable on their notes irrespective of losses, the latter are liable only for the *pro rata* share of such losses in common with all other available premium notes held by the company.

If the foregoing is a correct exposition of the intention of the legislature that framed the act of 1849, it is quite important to the applicant for insurance to know whether he is becoming a stockholder in the company, or whether its capital has been made up and the company authorized to commence business. The case before the court presents the question whether a party can be made a stockholder and liable for the full amount of his premium note, when he neither knows that he is assuming any such obligation nor intends to assume it.

Silas Mann was the agent of the insurance company, through whom the note in suit was obtained. He was called as a witness, and testified, in substance, that in June, 1851, he applied to Knowlton, the defendant's agent, in regard to getting the defendant's property insured; talked with him about this company, and told him (K.) that he (M.) was ap-

pointed agent of the Farmers' Insurance Company of Oneida county, and that he would like to take his application when the company was ready to receive it; told him the company was not then organized, but would be in a short time. On the day the application was made, Mann told Knowlton the company was ready to receive applications.

Knowlton was sworn, and testified to substantially the same matters, except that he understood the company was organized. This was all the evidence bearing on this branch of the case, except that the note was presented to the persons appointed by the comptroller to examine the notes, as a part of the capital, and was estimated and certified as such.

Upon the evidence of the agent of the company it is impossible, it seems to me, to say that the defendant was made to understand that he was desired to become a stockholder in this company; or that he intended to become such. On the contrary, the application to the agent was to insure the buildings in the company, when it should be in a situation to do business; that it was not then, but soon would be; and when it was authorized to receive applications, the request to insure was renewed. The defendant, on this evidence, was not left to ascertain the responsibilities he was taking on himself, as he might be said to be if nothing more had been said than that the company was not yet organized. But he was actually misled. The proposition was not made to insure until the company was authorized to enter into a binding contract of insurance. If Mann understood that he was applying for subscriptions to the capital stock, or if the company intended to have him obtain subscribers to the stock, why were not *" Books to receive subscriptions,"* provided for and contemplated by the last clause of section 4 of the general act, furnished to him, and by him to the defendant's agent? There was no intimation given by any person that any obligation was suggested or desired other than that incurred by every person insuring in a mutual insurance company.

To make a valid contract, the minds of the parties must meet. They must both intend to enter into the engagement expressed by the terms of the contract. When this element is wanting, there is no contract made. I am satisfied the defendant never intended to become a subscriber for the stock of this company; and I am also satisfied that if the company intended that their agents should obtain subscriptions for stock in the manner it was done in this instance, they deliberately intended to cheat the persons applying for insurance. A contract thus obtained should be declared void.

It may be that upon an assessment for losses, the defendant will still be liable to the extent of his note; but if so, he will be charged in conformity with the terms of the contract entered into by him with the company.

In this view of the case it is unnecessary to examine the other questions raised on the trial.

The judgment must be reversed, and a new trial ordered; costs to abide the event.

Judgment reversed and new trial granted.

[ONONDAGA GENERAL TERM, January 3, 1860. *Allen, Mullin* and *Morgan,* Justices.]