THOMAS A. CUTTS, Respondent,. *v.* WILLIAM B. GUILD, Appellant.

A *bona fide* purchaser of a judgment from an assignee takes the same, subject to any equities between the judgment creditor and his assignee.

Defendant, as assignee, recovered a judgment against D. & H. He also recovered several judgments in his own name, on behalf of the T. Co. These latter were sold at auction and bought by W., but no assignments were executed. W., being advised by an agent of a party desiring to purchase, and supposing the first judgment to be one of those purchased by him, negotiated a sale thereof and drew up an assignment, which defendant, upon being informed by W. that it was one of the T. Co.'s judgments, and so believing, and without receiving any consideration therefor, executed. Defendant having subsequently ascertained that the judgment so assigned was not one of the T. Co.'s judgments, settled with the judgment debtors and executed to them a satisfaction thereof, they having received no notice of the assignment In an action to recover damages, *held*, that plaintiff took the assignment subject to the equities between the parties to the original assignment; that as there was a mutual misunderstanding as to the subject-matter of the contract it was not binding, defendant's assignee took no interest in the judgment by the assignment, and none was transferred to the plaintiff.

(Argued January 8, 1874; decided May term, 1874.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment in favor of plaintiff entered upon a verdict, and affirming an order denying a motion for a new trial.

This action was brought to recover damages for an alleged wrongful act of defendant in satisfying a judgment after he had assigned it.

The defendant, October 14, 1856, as assignee of the firm of O. Boyden & Co., of Newark, N. J., recovered a judgment in the Supreme Court of New York against M. Drury and S. Humphrey for $545.29. About the same time he recovered several judgments in his own name on behalf of the "New Jersey Patent Tanning Company." These judgments last mentioned were subsequently sold at public sale and were purchased by one Isaac M. Ward.

No formal assignments of these last judgments were executed by defendant to Ward. In May or June, 1858, one W. H. Dodge, a broker in the city of New York, applied to Ward to buy the judgment against Drury and Humphrey. He had previously sold some of the Tanning Company's judgments for Ward, which were confessedly of but little value. Dodge represented this judgment as one of this class and offered him fifty dollars for it. Crawford, a lawyer in New York, negotiated for this judgment through Dodge in behalf of a client, Edward J. Wheeler. Ward, supposing that the judgment referred to was one of the " Tanning Company's" judgments, applied to the defendant to make an assignment of it, stating that it was one of the class referred to. Guild believing the statement, and having no means to verify it at hand, executed the assignment to Edward J. Wheeler, receiving no consideration. Ward received a check for fifty dollars and paid Dodge ten dollars commissions. One Fuller had an interest in the purchase ; he afterward (15th September, 1868) purchased Wheeler's interest, paying him $400, which he borrowed of Frederic Bill, and for which he gave his note, and to secure the same the assignment was taken from Wheeler to Bill; the note was subsequently paid. Fuller sold the judgment to plaintiff, the latter receiving an assignment thereof from Bill. On October 12th, 1867, the defendant having ascertained that the judgment was not one of the " Tanning Company's" judgments, settled with the judgment debtors and gave them a satisfaction. They had received no notice of the assignment. The debtors then applied to the New Jersey court to have the judgments satisfied. The proceedings were resisted by Fuller and the satisfaction was entered. From this order Fuller took an appeal which is still pending.

At the trial the judge only submitted to the jury the amount of damages, instructing them that the plaintiff could recover the amount of the New Jersey judgment and interest, Fuller's expenses in resisting the satisfaction of that judgment as well as for loss of time.

The jury, under these instructions, found a verdict for plaintiff for $1,870.

There were a number of exceptions taken to the judge's charge and to his rulings upon questions of evidence, which are discussed in the opinion.

*E. N. Taft* for the appellant. A defendant may set up as many defences as he may have, whether legal or equitable. (Code, § 150.) None of the items of damage claimed for moneys paid out by Fuller in resisting the application of the judgment debtor for satisfaction of the judgment, based upon the settlement with Guild, were allowable. (Sedg. on Dam. [5th ed.], marg. page 78 and note 1, pp. 292–294, 326; Rawle on Cov. [4th ed.], 304, 312; *Downer* v. *Mad. Co. Bk.*, 6 Hill, 648; *Ayrault* v. *Pacific Bk.*, 1 Abb. [N. S.], 383; *Armstrong* v. *Percy*, 5 Wend., 535; *Holmes* v. *Weed*, 24 Barb., 546; *Del. Bk.* v. *Jarvis*, 20 N. Y., 226; *Reggio* v. *Braggiotti*, 7 Cush., 166; *Richardson* v. *Dune*, 8 C. B. [N. S.], 655.)

*L. A. Fuller* for the respondent. Plaintiff is entitled to recover the expenses of resisting the motion for satisfaction of the judgment. (*Weston* v. *Chamberlain*, 56 Barb., 415, 424; *Del. Bk.* v. *Jarvis*, 20 N. Y., 226; 45 id., 305; Rawle on Cov., 97–100; 4 J. R., 1; 7 id., 174; 13 id., 51; 9 Wend., 423; 3 Cai., 115; *Miller* v. *Prest.*, etc., 41 N. Y., 98.)

DWIGHT, C. The judge at the circuit withdrew all the questions contained in this case from the decision of the jury, except the single one of the amount of damages. His professed object was to enable a full review to be made of them in the appellate court. He was requested to charge on the following points, among others: (1.) That if the jury believed that Mr. Dodge represented Crawford and Wheeler and Fuller, that the plaintiff cannot recover. (2.) That if they believed that Mr. Fuller was jointly interested with Mr. Crawford or Mr. Wheeler or both of them in the purchase of

the judgment, the plaintiff cannot recover. (3.) That if they believed on this evidence that Mr. Fuller and Mr. Wheeler had notice of the circumstances under which the assignment was obtained, the plaintiff cannot recover. (4.) That if the broker represented them, as their agent, then they had notice. Each of these requests was refused under due exception. They were not mere abstract propositions of law, as under a certain view of the evidence, they became material to the cause. It will only be necessary to consider these questions, and whether the judge erred in his rulings as to any of them.

This was an assignment of a judgment, a transaction which, prior to the Code, had no existence in a court of law and was only recognized in equity. Since the Code, the assignee takes his interest subject to the equities between the original parties. Though the judgment itself is perfectly valid, yet any equities which affect the assignment must bind the assignee, even though he acted in good faith. If, for example, there is any equitable defence to this assignment toward Wheeler, Fuller must stand in his place, even though he took his title from Bill, who advanced the money to pay for his interest. No one of the assignees can occupy any better position toward this judgment than Wheeler himself held. This rule is perfectly well settled as to the assignees of mortgages. (*Bush* v. *Lathrop*, 22 N. Y., 535.) In that case, an assignee of a mortgage had taken an assignment absolute on its face, but which was, in fact, a mortgage. It was then assigned, through two successive assignments, to the defendant who took it as a purchaser for value and in good faith. It was held, that he took it subject to the equities between the mortgagee and his assignee. The doctrine which had begun to take some slight root in our jurisprudence that such a claim as this was a *latent* equity, and that the rule that assignees do not take subject to an equity of that sort, was emphatically repudiated. Lord THURLOW's expression was warmly commended, that "a purchaser of a chose in action must always abide by the case of the person from whom he buys." (*Davies* v. *Austen*, 1 Ves., 247.) This case has been since sustained in *McNeil* v. *Tenth*

*National Bank* (46 N. Y., 325, 338); *Schafer* v. *Reilly* (50 id., 61), and cases cited in the opinion of Allen, J., on page 67; *Reeves* v *Kimball* (40 id., 299); *Ingraham* v. *Disborough* (47 id., 421). See, also, *Mickles* v. *Townsend* (18 N. Y., 575). This must now be deemed to be settled law. The principle is equally applicable to the assignment of judgments. It was so held in the court for the correction of errors in 1 Johnson, 529 (*Bebee* v. *Bank of New York*). A clear synopsis of this complicated case is given by Denio, J., in *Bush* v. *Lathrop* (*supra;* 22 N. Y., 539, 540). See, also, 1 Abbott's Court of Appeals Decisions, 106. The general doctrine that a *bona fide* holder of a chose in action takes subject to the equities between the parties, is emphatically affirmed in *Ingraham* v. *Disborough* (*supra*). It must, accordingly, be l eld to be the law of the present case, that Fuller must take his right subject to the equities between the original parties to the assignment negotiated with Dodge.

There was evidence in the case given by Fuller, that he was informed, when he took the assignment by Crawford, that Dodge had negotiated the transfer in behalf of a client of his, Edward J. Wheeler. Dodge swears that he bought the judgment for Crawford. Wheeler testifies that Crawford made the purchase on his account. There was abundant evidence to submit to the jury that Dodge was acting for Wheeler. On that supposition, the knowledge of Dodge must, of course, be imputed to Wheeler.

The case thus becomes reduced to an inquiry as to the position of the parties, on the supposition that the defendant and Wheeler had been negotiating this transaction together.

Wheeler, through Dodge, proposed to purchase a "Tanning Company" judgment. It was well known what judgments of this kind were, that they were of doubtful value and to be sold only for a nominal price. Ward was to sell one. It was well understood that the negotiation was to be made with Ward as owner. The proposition was to buy of Ward a certain kind of judgment, which he was understood, both by the proposer and by Ward, to own, and to which, it

was also understood, that the defendant held only a nominal title. What was, in fact, assigned, was a judgment belonging to the defendant, in which Ward had no interest, and not belonging to the class referred to. It is as though A. was a bailor of a horse in the constructive possession of B., a bailee, and C. made a proposition to B. to purchase it as belonging to A., by indicating certain marks upon it which neither the bailor nor bailee remembered. Let it be further assumed, that the bailee signed a bill of sale as having a special property in the animal, and that it turned out contrary to the understanding of all parties that the animal, possessing the specified marks, really belonged to B., and that while meaning to aid in the sale of A.'s horse, and being so supposed by C. to act, B. had really sold his own. Would that be a sale? Do the minds of the parties meet in such a case? Suppose that in the present case, the "Tanning Company's" judgments had been valuable, and the judgment held by Guild, as assignee of Boyden, of little worth, would Wheeler have been bound to take the latter under the same state of facts? The case is one of error as to the subject-matter of the contract. To make a valid contract, the minds of the parties must meet, and both must intend to enter into the engagement expressed by the terms of the contract. (*Dana* v. *Munro*, 38 Barb., 528; *Baldwin* v. *Mildeberger*, 2 Hall, 176; *Saltus* v. *Pruyn*, 18 How. Pr., 512; *Scrantova* v. *Booth*, 29 Barb., 171; *Booth* v. *Bierce*, 38 N. Y., 463.) What is done under the supposed contract where there is such an error or mutual misunderstanding that the minds of the parties do not meet, is not binding. (*Fullerton* v. *Dalton*, 58 Barb., 236.) The rule as it existed in the Roman law is well stated in Domat on Civil Law (§ 234), "The covenants in which the persons * * * did not know what was necessary to be known in order to form their engagement, are null. Thus the covenants in which the contractors mistake one another's meaning, the one meaning to treat of one thing and the other of another, are null through the want of knowledge, and of their consent to one and the same thing." The principle of this case closely

resembles that of *Couturier* v. *Hastie* (5 House of Lords
Cases, 673). In that case, a factor sold corn at sea, guarantee-
ing the performance of the contract by the purchaser. In
fact, the corn had been previously sold under regular proceed-
ings on account of its being damaged. The parties to the
factor's sale were ignorant of the fact. The purchaser repu-
diated the sale and an action was brought against the factor
on his guaranty. It was decided that the contract contem-
plated an existing thing to be bought and sold, and, as
this was not the case when the sale occurred, there was no
liability. So in the present case, the contract contemplated
a "Tanning Company's" judgment. As that did not exist,
or was not acted upon, which is equivalent, there was no sale.
Accordingly, although Wheeler took in form the assign-
ment of another judgment than the one contemplated, as he
had no right to it, he became at once a trustee for the defend-
ant. His trust was a naked one, and a court of equity would
have required him at once to re-convey to the defendant.
He had no real interest whatever in the judgment. As no
notice had been given of the assignment to the judgment
debtors, there was no embarrassment in obtaining the amount
due from them. The plaintiff has no action for damages for this
act, unless he can show that he was in some way wronged. No
equitable title to the judgment passed, even to the extent of
fifty dollars. If Ward received that sum without consideration,
the plaintiff may have his remedy against him. If he has
any remedy against the defendant, it is not one based on the
ownership of the judgment by the plaintiff but on some
other theory. If these views are correct, it is plain that the
judge erred at the circuit, in refusing to charge as requested
by the defendant. These requests were in substance, that if
the jury believed that Dodge was acting for Wheeler and
had notice of the facts of the transaction, or was acting for
Crawford, Wheeler or Fuller or either of them, this notice
affected the plaintiff, or if they believed that Wheeler had
notice of the facts, this also affected him and that in either
case the plaintiff could not recover.

For this error there must be a new trial, and it is unnecessary in this aspect of the case, to consider the other questions raised on the argument.

The judgment should be reversed and a new trial ordered. All concur.

Judgment reversed.