## Charles Luecht v. James H. Pearson.

1. JUDGMENTS—*Assignable so as to Transfer the Legal Title to the Assignee.*—A judgment is a chose in action, assignable so as to transfer the legal title to the assignee.

2. FRAUD AND DECEIT—*Renders All Acts Void.*—All fraud and deceit

by which a party is deprived of his rights renders the acts void and courts of equity have gone so far as to hold that, if an instrument is obtained from a person ignorant, but whose rights are known to the party obtaining the instrument, they will relieve even though no fraud or imposition has been practiced.

3. AGENTS—*Can Not Deal in the Matter of Their Agency for Their Own Benefit.*—An agent is bound to the utmost good faith to his principal; loyalty to his trust is his first duty, and he can not deal in the matter of the agency for his own individual benefit.

4. ASSIGNMENTS—*Of Choses in Action—What the Assignee Takes.*— The general rule is that the assignee of a chose in action stands in the shoes of his assignor, and, if such assignor is himself an assignee of the holder of the legal title, the second assignee takes subject to all equities existing between his assignor and the owner of the legal title.

5. SAME—*What a Remote Assignee Takes.*—Each successive assignee of a chose in action takes it subject to the equities existing between the original assignor and his immediate assignee.

**Bill to Set Aside an Assignment.**—Appeal from the Circuit Court of Cook County; the Hon. ROBERT W. HILSCHER, Judge, presiding. Heard in this court at the October term, 1901. Reversed and remanded with directions. Opinion filed March 6, 1902.

Statement.—The appellant, complainant below, filed a bill against Charles W. Beck, James H. Pearson and the city of Chicago as defendants, to set aside an assignment from complainant to Beck and an assignment from Beck to Pearson, of a judgment recovered by complainant against the city of Chicago May 18, 1896, for the sum of $1,500, on the ground that the assignment from complainant to Beck was obtained by the latter by false and fraudulent representations, and that Pearson had knowledge thereof. The bill prays for an injunction restraining payment of the judgment to Pearson, and for a decree against Pearson for all interest by him collected on the judgment. Beck was defaulted, the other defendants answered, replications were filed, the case was heard in open court, and the court rendered a decree dismissing the bill for want of equity. The facts are substantially as follows: Charles Luecht, the complainant, had a cause of action against the city of Chicago for a personal injury suffered by him in February, 1894. One Gunderson, a friend of his, suggested that he should sue the city; that he,

Gunderson, knew a good lawyer, and recommended complainant to Beck; that complainant, on such recommendation, went to Beck, supposing him to be an attorney at law, and employed him to bring suit against the city, agreeing to pay him as compensation for his services, one-third of such amount as might be recovered, and gave him the sum of $11 on account of costs, for which Beck receipted.   Beck was not an attorney at law, but was president of a company called "People's Casualty Claim and Adjustment Company," which had an office at number 175 Dearborn street, Chicago.

Beck did not appear as attorney in the suit against the city, but caused it to be brought by attorneys at law, whose names appear of record as the plaintiff's attorneys.

Complainant testified that after employing Beck, he did not see him until within a few days before the recovery of judgment in the suit, when he was notified by Beck to come to his office, which he did, when Beck told him he thought a settlement could be made with the city, and took complainant to the office of the city attorney, who looked at his arm; that in a couple of days thereafter Beck notified him that he had judgment against the city for $1,500, and complainant said, " All right; " that Peck then said, " Now the city ain't going to pay this right off.   We have to wait until they get ready to pay it, but you get your money with interest and the money is good; but there is some papers which do not amount to much, but I want you to put your name to this; " that Beck also said that the papers were to give him, Beck, power to collect the money for him, complainant, from the city; that complainant can read and write the English language, but did not read the paper, and could not have understood it had he read it, and that he signed it without reading.   The paper referred to is the assignment of the judgment from complainant, Luecht, to Beck.   It is dated May 19, 1896; the consideration expressed is " one dollar and other good and valuable consideration," and it is absolute in form, and is indorsed: "Filed May 19, 1896.   S. D. Griffin, Clerk."

Complainant also testified that Beck never at any time asked him to sell the judgment to him; that nothing was said about selling it to anybody.

May 27, 1896, Beck assigned the judgment to the defendant, James H. Pearson, for the expressed consideration of $1,500. The assignment is absolute in form and contains this recital: "Which said judgment and costs were assigned to Charles W. Beck on May 19, 1896," and is indorsed: "Filed July 3, 1896. L. D. Griffin, Clerk."

Eugene H. Pearson, son of the defendant James H. Pearson, testified that the actual consideration paid by his father for the assignment was $1,245. Complainant testified that he did not learn of the assignment by Beck to Pearson until some time in the year 1898. Complainant also testified that in 1897 he last saw Beck, and at that time, he, witness, was short of money, and thought, from what Beck had said, that he could get interest on the judgment, if nothing else; but Beck told him that he couldn't get anything until the whole judgment should be paid, when he said he had nothing to show that he had any judgment, and Beck said, "I might as well give you a little note in writing, which shows you have one thousand dollars coming from the city, with interest," and then gave witness a note for $1,000. The note was put in evidence and is dated "Chicago, February 8, 1898," is for $1,000, payable to the order of Charles Luecht, with interest at five per cent per annum after date. Signed, C. W. Beck." Complainant testified that he did not pay any attention to the note at the time, but discovered in about a year afterward that it was dated 1898 instead of 1897; and that he never asked for money on the note or offered to return it.

The following letter was put in evidence by complainant:

"CHICAGO, Feb. 8, 1898.

MR. CHARLES LUECHT:

DEAR SIR: Your note found on my desk. There was a transfer made of the judgment, and last year I gave you a note for $1,000 for another year, pending payment of the judgment; as soon as the city pays your judgment you will get your $1,000, with interest. I will look and see if it is

on the appropriation for this year and let you know.    Have
been out of the city until Monday, or I would have looked
it up before.            Yours truly,
                                        C. W. BECK."

Complainant testified that when he went to see Beck
about bringing suit against the city, the sign on Beck's
private door was "Lawyer's Office," and that on the out-
side door was a sign, "Beck, Attorney."    The record does
not show when the suit of Luecht v. The City of Chicago
was commenced, but does show that judgment was rendered
in that suit May 18, 1896.    There is no evidence except
that of complainant as to the signs prior to March 15, 1897.
Rudolph Frankenstein, formerly an attorney for Beck, tes-
tified that Beck left Chicago for Cincinnati in 1898, and
that then he had no property except his homestead, which
was mortgaged for all it was worth.    Eugene H. Pearson
testified that his father, James H. Pearson, purchased from
Beck the judgment in question, and, at the same time,
another judgment, the consideration for both being $2,075,
and gave to Beck the following check:

                          "CHICAGO, May 27, 1896.
Pay to the order of Charles W. Beck, Att'y, two thousand
seventy-five dollars, $2,075.
                              JAMES H. PEARSON."

Indorsed: "Charles W. Beck, attorney."    "For deposit
of C. W. Beck," and marked paid.

The witness Pearson also testified that they had purchased
other judgments from Beck, and that they had had trouble
in regard to some of them.    The same witness testified that
he, acting for his father, had collected interest on the judg-
ment from the city semi-annually in the months of January
and July of each year.

WHEELER & SILBER, solicitors for appellant.

GEORGE SAWIN, solicitor for appellee; EUGENE CLIFFORD,
of counsel.

MR. JUSTICE ADAMS delivered the opinion of the court.
It is not contended by appellee's counsel, nor can it, as

we think, be successfully contended, in view of the evidence, that the appellant was not defrauded by Beck. Appellant's testimony as to what occurred between him and Beck is uncontradicted. The evidence shows that appellant consulted Beck, believing him to be an attorney at law; that he placed confidence in him as such; that Beck never told him that any one except himself appeared for him in his suit against the city, and that he, appellant, had no knowledge whatever of the attorneys, who, by Beck's employment, conducted the litigation in his, appellant's, name. When the negotiation was pending for a settlement of the cause, it was Beck, and not an attorney of record, who took appellant to the city attorney's office to exhibit his arm, and it was Beck who negotiated the settlement.

That Beck purported to be an attorney is further evidenced by the testimony of appellant as to the sign on his door, and by the fact that he took a check from Pearson, "payable to the order of Charles W. Beck, Att'y," and indorsed it to the bank, "Charles W. Beck, Attorney." He represented to appellant that the absolute assignment from appellant to him did not amount to much; that it merely gave him authority to collect the money from the city. A year after the assignment to Pearson, he told appellant that the city would not pay interest till it could pay the entire judgment, when he must, from his familiarity with such judgments, have known that the city paid interest on judgments semi-annually; and, further to deceive appellant, told him he would give him a little note to show that he had $1,000 coming from the city, and in his letter to appellant of February 8, 1898, nearly two years after he had assigned the judgment to Pearson, he says: "As soon as the city pays your judgment, you will get your $1,000 with interest;" after which, to crown the climax, he left Chicago for the, perhaps, more hospitable climate of Cincinnati. The following occurs in the opinion of the Circuit Court, a copy of which is contained in the abstract:

" The complainant, when he arranged with Beck for the prosecution of his claim against the city of Chicago, believed

that Beck was an attorney at law, and reposed in him the trust and confidence usual and necessary in such cases. * * The complainant was grossly imposed upon and the victim of a most reprehensible trick by Beck, when and in the manner that he induced the complainant to execute the assignment of the judgment in question to him."

We fully agree in these conclusions, from the evidence, of the learned chancellor. It is not contended by counsel for appellee that Beck did not, by misrepresentation and deceit, procure the execution of the assignment from appellant to him; that he did not cheat and swindle appellant; but counsel contend, and the court, as appears from its opinion, held that appellant, being able to read and write, did not exercise ordinary precaution or care in the execution of the assignment to Beck, and is, therefore, estopped to assert any equitable claim to the judgment in the absence of any evidence to impeach the good faith of Pearson. The question is whether this proposition, relied on by appellant's counsel, is the law. That the judgment is a chose in action and not assignable so as to transfer the legal title to the assignee will hardly be controverted. Cutts v. Guild, 57 N. Y. 229.

Such being the law, the legal title remained in the appellant, and the execution of the assignment to Beck by appellant, having been procured by his false and fraudulent representations, he, Beck, did not take even an equitable title.

" All fraud and deceit by which a party is deprived of his rights renders the act void, and courts of equity have gone so far as to hold that, if an instrument be obtained from persons ignorant of their rights, but whose rights are known to the party obtaining the instrument, they will relieve, even though no fraud or imposition has been practiced." Whitney v. Roberts, 22 Ill. 381, 383; Jamieson v. Beaubien, 3 Scam. 112; McDonald v. Fithien, 1 Gilm. 269.

Whether Beck purported to act as appellant's attorney at law, or whether appellant was induced to believe that he was such attorney, we regard as of little importance, so far as the legal question is concerned. He was, at least, appellant's agent, and, as such, occupied a fiduciary relation to

him. In Prince v. Dupuy, 163 Ill. 417, Dupuy, acting as the agent of one Johnson for the sale of the interest of the latter in land, learned that a third person who had been negotiating for the purchase, and who had offered $50 for Johnson's interest, would probably increase his offer, withheld this knowledge from Johnson, and procured from the latter a conveyance of his interest to himself for $50. In respect to the transaction the court say :

"The agent took advantage of the fiduciary relation which he sustained to his principal to procure for himself the subject-matter of the agency. This the law will not tolerate. The principle is too familiar to require elaboration or citation of authority for its support."

An agent is bound to the utmost good faith to his principal; loyalty to his trust is his first duty, and he can not deal in the matter of the agency for his own benefit. Merryman v. David, 31 Ill. 404; Kerfoot v. Hyman, 52 Ib. 512; Poillon v. Martin, 1 Sanf. Chan. 569; Mechem on Agency, Sec. 454, *et sequens.*

Beck not having acquired any equity in the judgment by the assignment procured by him from appellant, by reason of false and fraudulent representations, the question arises whether he conveyed any such equity to Pearson; in other words, whether the assignment from him to Pearson operated to convey what he had not. The general rule is, that the assignee of a chose in action stands in the shoes of his assignor; and if such assignor is himself an assignee of the holder of the legal title, the second assignee takes subject to all equities existing between his assignor and the owner of the legal title. As said by Lord Chancellor Thurlow in Davis v. Austen, 1 Vesey, 247, "A purchaser of a chose in action must always abide by the case of the person from whom he buys."

In Commercial National Bank v. Burch, 141 Ill. 519, 529, the court say :

"Each successive assignee of a chose in action takes it subject to the existing equities between the original assignor and his immediate assignee."

In section 709, 2 Pomeroy's Eq. Juris., the author writes:

"If the owner and holder of a thing in action, not negotiable, transfers it to an assignee upon condition, or subject to any reservations or claims in favor of the assignor, although the instrument of assignment be absolute on its face, this immediate assignee, holding a qualified and limited interest, can not convey a greater property than he himself holds; and if he assumes to convey it to a second assignee by a transfer absolute in form, and for a full consideration, and without any notice to such purchaser of a defect in the title, this second assignee takes it, nevertheless, subject to all the equities, claims and rights of the original holder and first assignor. In the second place, where the original assignment is accomplished by a forgery of the holder's name, or where it is effected by a wrongful conversion of the security, together with a written instrument of transfer which has been signed by the owner, or where it is made upon an illegal consideration between the owner and his immediate assignee, or where it is procured by fraud, duress, or undue influence upon the owner, and in either of these cases the thing in action is afterward transferred from the first to a second or other subsequent assignee, who takes it for value and without notice, the same rule must control; the equities of the original owner must prevail over the claims of the subsequent, though innocent, assignee."

The learned author cites numerous authorities, among which the following fully support the text: Bush v. Lathrop, 22 N. Y. 535; Reeves v. Kimball, 40 Ib. 229; Schafer v. Reilly, 50 Ib. 61; Cutts v. Guild, 57 Ib. 229; Davis v. Bechstein, 69 Ib. 440; Poillon v. Martin, 1 Sanf. Chan. 569; Judson v. Canovan, 17 How. 612.

That the rule is the same, even when the assignment is absolute in form, and the assignee is a purchaser in good faith, is held in Bush v. Lathrop, Reeves v. Kimball, Cutts v. Guild, and Maybin v. Kirby, cited *supra*. In Com. Nat. Bank v. Burch, 141 Ill. 517, 529, the court announced the rule absolutely thus:

"Each successive assignee of a chose in action takes it subject to the equities existing between the original assignor and his immediate assignee."

In view of the authorities that the equities existing

Luecht v. Pearson.

between the original assignor and his immediate assignee may be set up against a subsequent assignee, even though the original assignment is absolute in form and the subsequent assignee a purchaser in good faith, it is immaterial whether appellant read, or not, the assignment from him to Beck.

The fact that in New York the practice is governed by a code, does not in the least affect the applicability of the New York decisions cited.    In Bush v. Lathrop, 22 N. Y. 547, it is said:

" The code, indeed, requires all actions to be prosecuted in the name of the real party in interest; but this does not change, in any respect, the actual rights of the assignees between themselves."

Counsel for appellee rely on Moore v. Metropolitan Bank, 55 N. Y. 41, which supports appellee's view; but that case is inconsistent not only with the prior preponderance of authority in New York, but with the subsequent cases of Cutts v. Guild, 57 N. Y. 229, and Davis v. Bechstein, 69 Ib. 440, and is severely criticised by Pomeroy, (Vol. 2, Sec. 711, note 1), an author largely relied on in appellee's argument.    Pomeroy, in Vol. 2, Sec. 710, of his work, states an exception to the general rule, as follows:

" The owner of certain kinds of things in action not technically negotiable, but which, in the course of business customs, have acquired a semi-negotiable character in fact, may assign or part with them for a special purpose, and at the same time may clothe the assignee or person to whom they have been delivered with such apparent *indicia* of title, and instruments of complete ownership over them, and power to dispose of them, as to estop himself from setting up against a second assignee, to whom the securities have been transferred without notice and for value, the fact that the title of the first assignee or holder was not perfect and absolute.    The ordinary and most important application of this rule is confined to the customary mode of dealing with certificates of stock.    If the owner of stock certificates assigns them as collateral security, or pledges them, or puts them into the hands of another for any purpose, and accompanies the delivery by a blank assignment and power of attorney to transfer the same in the usual form, signed

by himself, and this assignee or pledgee wrongfully transfers them to an innocent purchaser for value in the regular course of business, such original owner is estopped from asserting, as against this purchaser in good faith, his own higher title and the want of actual title and authority in his own immediate assignee or bailee." Citing cases.

In Otis v. Gardner, 105 Ill. 436, the transfer by blank indorsement of a certificate of stock was held an exception to the general rule. In Bush v. Lathrop, *supra*, the court say:

" The cases in which, from motives of public policy, to promote the currency of certain securities, to prevent fraud, or to aid the vigilant against the careless, the party to whom the transfer is made is allowed to claim a greater interest than was possessed by the other, are exceptional; and it is for a party claiming the protection of an exception, to show that it exists in the particular case."

Clearly, the assignment of a judgment is not within any recognized exception to the general rule. Cutts v. Guild, *supra*.

Pomeroy points out that to suspend the general rule in the case of ordinary choses in action, which have not acquired a semi-negotiable character in fact, would be practically to destroy the distinction between negotiable paper and mere choses in action. Vol. 2, Sec. 710, *et sequens.*

Appellant's counsel lays some stress on the fact that the assignment from appellant to Beck was filed with the clerk. This is immaterial; besides, the law does not require such filing or make it constructive notice. Appellee, Pearson, however, had actual notice, by Beck's assignment to him, that Luecht was the legal owner of the judgment, and might have protected himself by inquiring of appellant. Appellant admits that he agreed to give Beck for his services one-third of whatever judgment he might recover in appellant's suit against the city, and in his bill he offers to do complete equity to Beck, if it appears that he is entitled to any portion of the judgment by reason of his services, and to allow him such sum as may be found to be equitably due to him. Beck employed attorneys, who performed services

in the suit, and, as appears from appellant's evidence, he procured a settlement of the suit satisfactory to appellant, in accordance with which judgment was rendered. The assignment from Beck to appellee, Pearson, was for a valuable consideration, namely, $1,245, which was paid to Beck by Pearson. Under these circumstances we think it equitable that appellee, Pearson, should be allowed what Beck would have been entitled to by his contract with appellant, had he acted in good faith, namely, one-third of the judgment, or $500, with interest, on payment by Pearson to appellant of two-thirds of the interest heretofore collected by him from the city, and that appellant is entitled to $1,000 of said judgment, with interest from the date thereof, and that he should cancel and surrender to the court the promissory note for $1,000, made by Beck and payable to appellant's order.

The cause will be reversed and remanded, with directions to the Circuit Court to ascertain how much interest on said judgment for $1,500 the appellee, Pearson, has received from the city of Chicago, and the date to which the last interest so received by said appellee was estimated; and to decree that appellant is entitled to receive two-thirds of the said judgment, namely, $1,000, with interest from the date thereof, and his costs in his said suit against the city of Chicago, said interest to be paid to appellant as follows : the appellee, Pearson, to pay to appellant two-thirds of all interest heretofore paid by the city of Chicago to said Pearson, and the said city to pay to appellant all interest which has accrued since the date to which the last payment of interest to appellee. Pearson, was estimated, or which may hereafter accrue, on the sum of $1,000 of said judgment; and that the appellee, on payment to appellant of two-thirds of the interest which he has received from said city on said judgment, within a certain time to be fixed by the court, will be entitled to the one-third of said judgment, with interest thereon from the date thereof; and that the city of Chicago be enjoined from paying said judgment, or the interest thereon, otherwise than as aforesaid, and in the

proportions aforesaid, and that appellant shall deliver up to the court, for cancellation, the promissory note of date March 5, 1898, for the sum of $1,000, made by Charles W. Beck, and payable to the order of appellant; and that the same be canceled.    Appellant to recover his costs of this court.    Reversed and remanded, with directions.