Johnson, J.
 

 In the voluminous bill of exceptions there is included a very large amount of evidence, oral and documentary, much of which is not important in the solution of the material issues in the case. No finding of facts was made by the court of appeals, but it is stated in its entry that the issues joined were found in favor of the plaintiff and that the equities were with the plaintiff. It ¶ was the duty of the court of appeals to weigh the evidence, and in obedience to its familiar rule this court will accept the conclusions of the court of appeals on that feature of the case.
 

 In addition to its general finding of the issues in favor of the plaintiff, the court of appeals included in its entry a finding that the plaintiff was a partner of the defendant Joseph Goldberger, and had, as alleged in his petition, a partnership interest in the sum of $30,000, which the Steel Products Company agreed to pay in settlement of commissions earned under the contract made with it by said Joseph Goldberger in his own name. There
 
 *335
 
 fore, in the consideration of the legal questions presented we must proceed on the basis that the material allegations of the petition have been sustained; that the written contracts of partnership were made between, Cohen and Goldberger on November 6, 1911, and May 1, 1912; that the plaintiff contributed to the partnership capital the sums alleged in the petition: that the parties entered upon the performance of the partnership agreement; that Goldberger secured the commission contract with the Steel Products Company for the partnership; and that the claim for such services, which was subsequently settled on a basis of $30,000, belonged to the partnership.
 

 It is conceded that Goldberger had obtained the contract with the Steel Products Company in his own name and that Cohen had been informed of this fact. On December 31, 1912, Goldberger made a written assignment to Morgenthaler of the claim for commissions against the Steel Products Company to the extent of $26,866. The consideration was pre-existing indebtedness owed by Goldberger to Morgenthaler. On the same day he assigned to Morgenthaler $3,134 of the claim to secure a preexisting debt owed by Goldberger to the Court House Savings Bank, of which Morgenthaler was treasurer. Subsequently on January 20, 1913, Gold-berger executed a new partial assignment of the claim to Morgenthaler. It is conceded that Mor-genthaler ,gave additional consideration for this assignment in the form of loans and advancements which he made to Goldberger. It is not disputed that at the time of the assignments to Morgenthaler
 
 *336
 
 he had no knowledge of the interest of Cohen in the claim.
 

 Therefore, the situation presented is: A partnership becomes the owner of a non-negotiable chose in action, to-wit, a claim for services rendered, and one member of the partnership' makes 'an assignment for a part of the claim to a third party in payment of his individual pre-existing indebtedness to that third party, who had no knowledge that the claim was an asset of the partnership. Subsequently a new partial assignment of the claim was made by the same partner to the same person in consideration of new loans. The remaining partner had no participation in or knowledge of these assignments to the third party.
 

 What are his rights in the premises ?
 

 It will be noted that the thing assigned was a non-negotiable chose in action and therefore the rights of the assignee are different from those of án innocent purchaser for value of a negotiable instrument in due course and before maturity; that the consideration for the first assignment was a pre-existing individual debt of the partner who made the assignment to the assignee; and that a subsequent assignment was made in consideration of new loans. These differing conditions have frequently had the consideration of courts and writers.
 

 In
 
 Lewis
 
 v.
 
 Anderson, 20
 
 Ohio St., 281, the facts and the holding of the court are stated in the syllabus, viz.: “One partner of a manufacturing firm gave a mortgage on real estate of which he held the legal title, but which in equity belonged to the firm, without any consideration other than to secure
 
 *337
 
 his pre-existing individual debt to the mortgagee who had no notice of the partnership or of the liabilities of the firm then existing:
 
 Held,
 
 that the lien of the mortgage on the premises was not superior to that of such prior liabilities of the firm.”
 

 In 30 Cyc., 501, these principles are declared:
 

 “In general. A partnership is under no obligation for the individual debts of its members; and hence a partner cannot use the firm’s assets to pay his individual debts without their consent, nor can he pledge the firm credit for such debts. In order that such transactions may bind the firm, the assent or ratification of the other members must be shown, or a case of estoppel .must be made against them. When neither assent, ratification, nor estoppel is shown, a transfer of partnership assets by one partner in discharge of his individual obligation does not divest the firm title,- whether the party receiving the property knew that it belonged to the firm or not; for it is a case where the recipient takes property from one who is not its owner, and who has no authority to transfer it save in the course of the partnership business.”
 

 In
 
 N. Rogers & Sons
 
 v.
 
 Batchelor et al., Admrs.,
 
 12 Peters, 221, which is a case carefully considered and frequently cited, it is held: “Funds of a partnership cannot be rightfully applied by one of the partners to the discharge of his own separate preexisting debts, without the express or implied assent of the other parties; and it makes no difference, in such a case, that the separate creditor had no
 
 *338
 
 knowledge at that time of the fact of the fund being partnership property.”
 

 The opinion of- the supreme court of the United States in that case was written by Judge Storey, and while as to some of its features this particular case has been criticised yet in the absence of assent, ratification or estoppel it is generally accepted as the established and sound rule. The same proposition is declared and enforced in Cannon v.
 
 Lindsey,
 
 85 Ala., 198, 201.
 

 In
 
 Porter
 
 v.
 
 Dunlap,
 
 17 Ohio St., 591, a school teacher assigned a part of his earned and unearned wages to the township treasurer and received pay for the same in full. The school teacher agreed that the treasurer should retain the amount, when earned, out of the school funds in his hands. Afterwards, when the amount was fully earned, the school teacher obtained from the clerk an order on the treasurer for the amount, and then transferred the order to a third party, who paid a valuable consideration for it and had no notice of-the former transfer to the treasurer. The right of the third party to sustain an action against the treasurer to recover the amount of the order was involved. In the opinion, at page 595, it is said: “But this assignment of the order by Clark to Dunlap, like his previous transfer of the same claim to Porter, was only an equitable assignment. The order was not negotiable paper, and was invested by law with none of the attributes or immunities of negotiable paper. It was simply an evidence of indebtedness. The assignee of it took it subject to all the infirmities and equities imposed
 
 *339
 
 upon it by his assignor, and which would attach to it in the hands of his assignor. The assignee stood in the shoes of the assignor, and could have no better title than he; and what would estop the one to insist upon its payment against the claim of Porter, would equally estop the other.”
 

 It is held in
 
 Sutherland
 
 v.
 
 Reeve,
 
 151 Ill., 384:
 
 “A
 
 purchaser of a claim, which is not negotiable, can only acquire such interest as the vendor has. He will take the claim subject to the equities between the vendor and a third person claiming the equitable title.”
 

 To the same effect are
 
 Cutts
 
 v.
 
 Guild, 57
 
 N. Y., 229;
 
 Central Trust Co. of New York, as Trustee,
 
 v.
 
 West India Improvement Co.,
 
 169 N. Y., 314, 324;
 
 Cowdrey
 
 v.
 
 Vandenburgh,
 
 101 U. S., 572, 575, and 2 Pomeroy’s Eq. Juris. (4 ed.), Sections 708, 709.
 

 Mr. Justice Harlan in
 
 People’s Savings Bank
 
 v.
 
 Bates,
 
 120 U. S., 556, points out the distinction between rights of parties in the transfer of negotiable and non-negotiable instruments. Many authorities are examined and the rule as above stated is approved. It is held that the purchaser under such circumstances must be held to have known this distinction.
 
 Fairbanks, Jr.,
 
 v.
 
 Sargent, Exr.,
 
 104 N. Y., 108;
 
 The Elmbank, 72
 
 Fed. Rep., 610.
 

 We think it clear on reason and authority that when Morgenthaler took the assignment of the claim against the Steel Products Company from Goldberger as payment of a pre-existing claim, which Morgenthaler had against him, he, Morgen-thaler, took the claim subject to all equities and all
 
 *340
 
 interest which Cohen owned; that is to say, Gold-berger only had the right to sell to Morgenthaler what he Goldberger owned, and after the transfer Morgenthaler stood in Goldberger’s shoes and had no better right than Goldberger had so far as the transaction related to the payment of pre-existing debts. As to the first assignment for the preexisting debt, there are no circumstances which estop Cohen and no assent or ratification is claimed.
 

 In support of his contention that the pre-existing debt constituted a sufficient consideration as against the plaintiff Cohen, the plaintiff in error cites
 
 Corwin
 
 v. Suydam, 24 Ohio St., 209. We have carefully considered that case and we do not think that the rule there laid down applies to the facts alleged in the plaintiff’s petition and sustained by the finding of the court of appeals in this case. The facts in that case are stated in the second proposition of the syllabus, as follows: “Where the sole acting member of a
 
 dissolved
 
 partnership, with full power to dispose of its property and pay its-debts, himself becaíne a creditor of the firm, by advancing his private funds in payment of its debts, and then in good faith and with no intention to defraud the company, disposed of property of the firm to an amount less than the sum so due him, in satisfaction of a debt due from him to a third person, who received the same- in like good faith, and in the belief that such sale was authorized by the firm:
 
 Held,
 
 that this disposition of the property can not be avoided by another member of the firm, it appearing that all the outside debts of the firm are paid or secured, and that there is noth
 
 *341
 
 ing due to such member from the firm, unless he includes in his account against it a part of the same claim of A upon the firm, transferred by A to him in satisfaction of a debt due to him from A.” In that case the thing done by the partner who disposed of property of the firm was in the interest of the firm, which was indebted to him in an amount larger than the value of the property sold, and the whole transaction was in good faith and with full authority. In this case the partnership rights were wholly disregarded.
 

 Now, so far as the assignment of January 20, 1913, is concerned it was made to cover loans made by Morgenthaler afterwards, and as it is undisputed in the record that Cohen knew that Gold-berger had taken the contract with the Steel Products Company in his own name, and made no objection to it, and as Morgenthaler had no knowledge of Cohen’s interest in that contract, Cohen is estopped to object to the payment out of the claim of such loans as Morgenthaler thereafter made. There is a clear distinction between the claim of Morgenthaler under the assignment to secure the pre-existing debt and his claim to secure subsequent loans. As to the pre-existing debt it was not and could not have been made on the faith of the apparent ownership of Goldberger of the full and undivided interest in the claim. The claim was not then in existence. Morgenthaler can have no equity as against Cohen so far as that claim is concerned. He relied simply and absolutely on the statements of Goldberger concerning the ownership of the claim. It is not claimed that there was any
 
 *342
 
 act of Cohen that induced Morgenthaler to surrender anything, and in fact he surrendered nothing.
 

 The application of the doctrine of estoppel must be determined in each case by the particular circumstances of the case, and no satisfactory definition can be given to fit all cases. But it may be said that a person is held to a representation made or a position assumed, where otherwise inequitable consequences would result to another, who, having a right to do so under all the circumstances of the case, has in good faith, relied thereon. 10 R. C. L., 689.
 

 An estoppel arises when one is concerned in or does an act which in equity will preclude him from averring anything to the contrary, as where another has been innocently misled into some injurious change of position.
 
 Russell, Admr.,
 
 v.
 
 Fourth Natl. Bank,
 
 102 Ohio St., 248.
 

 So far as the pre-existing debts are concerned this case lacks the essential elements which must be present before the application of the doctrine of estoppel.can be insisted upon.
 

 As to the partial assignment made January 20, 1913, the situation is different. Cohen knew that Goldberger had taken the Steel Products Company contract in his own name and did not object Therefore, when Morgenthaler gave the new considerations for the hew assignment of January, 1913, in the form of new loans, he was a
 
 bona fide
 
 purchaser for válue, and as to those the circumstances are such as
 
 to
 
 estop Cohen
 
 from
 
 objecting to Morgenthaler’s claim therefor, -and the court of
 
 *343
 
 appeals in the statement of the account prepared by it allowed Morgenthaler’s claim for these items.
 

 It is contended by the plaintiff in error that the bankruptcy proceedings against Goldberger adjudicated the rights to this claim and precluded the assertion by Cohen of any interest therein. Cohen was never made a party to the bankruptcy proceedings, was never served with process therein, and never appeared either in person or by counsel. In a bankruptcy proceeding, as is well known, the court deals with individual assets of the bankrupt. So far as the claim against the Steel Products Company was concerned it had been assigned, to and had been collected by Morgenthaler. Cohen was asserting his claim against Morgenthaler for an interest in the commission account. There was no obligation on Cohen to take any notice of the bankruptcy case.
 

 It is elemental that in.order that a judgment may be conclusive against a party he must have had an opportunity to be heard. This is a necessary requisite of due process of law.
 

 In
 
 Postal Telegraph Cable Co.
 
 v.
 
 City of Newport, Ky.,
 
 247 U. S., 464, it is said, at page 476: “And as a State may not, consistently with the Fourteenth Amendment, enforce a judgment against a party named in the proceedings without a hearing or an opportunity to be heard [citing cases], so it cannot, without disregarding the requirement of due .process, give a conclusive effect to a prior judgment against one who is neither a party nor in privity with a party therein.”
 
 Auglaize Box Board Co.
 
 v.
 
 Hinton,
 
 100 Ohio St., 505.;
 
 *344
 

 Haley
 
 v.
 
 Hanna,
 
 93 Ohio St., 49, and
 
 In re Kohl-Hepp Brick Co.,
 
 176 Fed. Rep., 340.
 

 The plaintiff in error also contends that his rights in this case must be determined by rules applicable to choses in possession and not in action. He contends that after the collection of the claim by Morgenthaler it became a chose in possession. While there is doubtless a substantial distinction between choses in action and choses in possession, where questions of priority between contending and successive transferees are concerned, we can see no such distinction where the question in issue concerns the validity of the original assignment of the chose in action itself. And no authority is cited in which such a distinction is made.
 

 In the statement of account which the court of appeals included in its entry it charged Morgen-thaler with the amount received from the Steel Products Company $23,565, deducted the amount paid to Court House Savings Bank, $2990, and the amount paid to Goldberger to carry on the business, $1510, making a total deduction of $4500, which left a balance of $19,065. Against this balance is charged Cohen’s investment of $1017.15, Goldberger’s investment of $3378.72, Goldberger’s previous services, $1000, Goldberger’s salary for 81 weeks at $40, $3240, and $2016 loaned by Mor-genthaler at various times subsequent to the assignment of January, 1913, leaving a balance of $8413.13, and from this the amount due Cohen, for which judgment was rendered, was ascertained.
 

 We think the statement of the account made pursuant to the findings of the court on the weight of
 
 *345
 
 the evidence and in obedience to the rules of law above stated was correct.
 

 The judgment of the court of appeals will, therefore, be affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Hough, Jones and Matthias, JJ., concur.