## Indiana Match Company v. Alice Leavitt Barrell Kirk, et al.

### Gen. No. 11,706.

1. CROSS-ERRORS—*when, deemed waived.* Cross-errors, when not argued, are deemed to have been waived.

2. SECONDARY EVIDENCE—*when alleged error in admitting, cannot be availed of.* An alleged error in admitting secondary evidence of the contents of a document not produced, cannot be availed of on appeal where the party seeking to object thereto has himself proven the existence and contents of such document, and this notwithstanding the burden of proof was upon the party offering such secondary evidence to prove the contents of such document.

3. ADVERSE CLAIMANTS—*how equities of, adjusted.* It is true that in equitable claims on a fund, stronger equities may overcome the advantage given by priority of time, but they must be really and substantially stronger, their superiority being based on solid legal grounds—not fancied or sentimental ones.

4. ASSIGNMENT—*what not want of vigilance so as to destroy prior rights of.* No want of vigilance is established against the assignee of an interest in a deceased's estate by showing that such assignee did not file such assignment in the court of probate, when she had, in fact, filed the same in the recorder's office and had delivered the original instrument to the executors of the estate.

5. CONSIDERATION—*when marriage deemed a valuable.* An existing marriage relation is a valuable and sufficient consideration to support a conveyance or settlement by a husband on his wife, if it does not affect the claims of creditors existing at the time of the said conveyance or settlement.

6. WAIVER—*when does not postpone rights under assignment.* The mere fact that an assignee of an interest in a deceased's estate, while living with her husband, consented to waive, for the purpose of allowing a partial payment to him, the strict enforcement of her rights under her assignment, does not prevent her from asserting such rights against those with whom she entertained no relations and of whom she had no knowledge.

Bill of interpleader. Appeal from the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the March term, 1904. Affirmed. Opinion filed January 23, 1905.

**Statement by the Court.** This is an appeal from a decree of the Superior Court of Cook County in an interpleader suit. The bill of interpleader was filed by the

executors of the will of Nancy A Kirk, deceased. It dealt with the balance of the distributive share in the estate of Nancy A. Kirk, shown by the final account of the executors to be due to Edgar W. Kirk (one of her sons) or to his assignees. That balance was $5,416.03, and the bill alleged that on the filing of the account it appeared that said balance or distributive share was subject to garnishment proceedings brought by one Mayer Louer, and to various assignments as follows : one to Alice Leavitt Barrell Kirk, dated March 16, 1900; one to Edmund S. Carr, dated May 23, 1901; one to Edward A. Biggs, dated June 1, 1901; one to the Indiana Match Company, dated July 19, 1901, and one to The Union Trust Company of Chicago, dated November 4, 1901. The bill prayed the relief usual on a bill of interpleader.

Edgar W. Kirk, Mayer Louer, Alice Leavitt Barrell Kirk, Edmund S. Carr, Edward A. Biggs, the Indiana Match Company and the Union Trust Company were made defendants. Edgar W. Kirk disclaimed all interest by his answer. Mayer Louer set up a judgment for $665.05, rendered on November 6, 1901, against Edgar W. and Alice B. Kirk, the garnishment of the executors on the same, and certain pending garnishment proceedings in the Superior Court of Cook County, giving him, as he claimed, a right to be first paid from the fund in question. He also alleged that if the assignment to Biggs should be given precedence he was entitled to a lien upon its proceeds. The other defendants claimed under their respective assignments. Alice Leavitt Barrell Kirk, who was the wife of Edgar W. Kirk at the date of the assignment to her, and at the time she filed her answer, but was divorced from him during the pendency of the cause below, set out the assignment (dated March 16, 1900) in full in her answer, alleged due and proper notice of it to the executors, and claimed the whole fund under it. She asserted that all the other alleged assignments were given subsequently to hers, and that she was entitled to be first paid. The assignment which she set out was of " Ten Thousand dollars of my interest in the

personal property and estate of my mother, Nancy Ann Kirk, deceased." It was expressed to be in consideration of one dollar and love and affection. Under it Alice L. B. Kirk alleged there was still due over $6,000.

Edmund S. Carr claimed under an assignment (dated May 23, 1901) by Edgar W. Kirk of all right, title and interest in the estate of said Nancy A. Kirk, and alleged that said assignment should be made a claim prior to all others.

Edward A. Biggs also claimed under an assignment, dated June 1, 1901, of all Edgar W. Kirk's distributive share in the Nancy A. Kirk estate, made, he alleged, to secure a certain promissory note " for moneys loaned or to be loaned, services rendered or to be rendered, and for any and all debts or obligations assumed or caused to be assumed, contracted for, created or paid for, on behalf of said Edgar W. Kirk and Alice B. Kirk, his wife, or either of them." He made, however, no claim to the fund, but alleged that he sold the note to Martin Collins August 1, 1901, and prayed that the assignment to himself might be adjudged a first lien on the fund to secure said note. Martin Collins, by an interplea, alleged himself to be the owner of the note of Kirk made to Biggs of $5,000, and claimed that the assignment to Biggs secured said note, and was subject only to the claim of Carr.

The Indiana Match Company set up by its answer an assignment (dated July 19, 1901) of " the remaining, unassigned portion of the distributive share of the estate of my mother, Nancy A. Kirk, deceased, whether my distributive share be in cash, real estate or chattels, to secure to the Jenvey-Kirk Match Company " (of which it is recited Edgar W. Kirk is a director and officer) " the shipment of at least one car of matches from the said Indiana Match Company on a credit of sixty days, and to secure to the said Indiana Match Company all moneys due from the said Jenvey-Kirk Match Company up to the sum of thirty-five hundred dollars."

The Union Trust Company set up an assignment, dated November 4, 1901, from Edgar W. Kirk, of his distributive

share in said estate, and claimed it to be superior to all other assignments of or claims against said distributive share.

The garnishment suit of Louer was consolidated with the chancery suit brought by the executors, and was afterward dismissed. The chancery suit proceeded in an informal and somewhat irregular manner, but on the bill, answers, replications and evidence, the chancellor in the Superior Court on October 5, 1903, entered a final decree distributing the fund, from which decree the present appeal was taken. The irregularities alluded to are not made the subject of complaint, but the contention goes directly to the merits of the matter. The decree is attacked as distributing the fund erroneously.

Upon the hearing it had appeared that although the answer of Carr alleged an absolute assignment for valuable consideration, his claim was only for $216 and interest. The assignment had been made to secure a note of $1,100 executed by Edgar W. Kirk and the Jenvey-Kirk Match Company and delivered to Carr. One thousand dollars only were paid out on this note. This was paid to the Jenvey-Kirk Match Company. The other hundred dollars Carr had, with the consent of Kirk, retained for services "in attending to the matter." Out of other security—assigned accounts—$884 had been repaid on this note to Carr.

Also on the hearing it had appeared that the $5,000 note given to Biggs and by him transferred to Collins, and secured by the assignment to Biggs, was in itself security for a much smaller sum—amounting, as claimed, to $350—when the note was assigned to Collins for $300 by Biggs. Collins' claim under this assignment was stated by him to be $350.

During the hearing also, the solicitors for Louer disclaimed any right to a lien or preference by virtue of the garnishment proceedings, but insisted on their claim under the assignment to Biggs.

The claim of the Union Trust Company seems to have been abandoned.

The decree awarded to Carr $153.21 (disallowing the further sum of $100 as usurious); to Louer $629.05, with interest from November 6, 1901, upon $615;05; allowed the complainants' (the executors) costs and attorney's fees to the amount of $528, and gave the rest of the fund, amounting to between $4,000 and $4,100, to Alice L. B. Kirk. It made various findings and declared that Alice L. B. Kirk, by virtue of her assignment, (the .existence of which it found) would be entitled to the whole fund in the hands of complainants, less the amount allowed them, if it were not that she was estopped from claiming against Carr the $153.21, because she had consented to or participated in the transactions resulting in the advances by him to secure which his assignment had been given.

The allowance to Louer was stated by the decree to be by virtue of a stipulation between Alice L. B. Kirk and Louer made in open court, and that to the executors as complainants, by the consent of all the parties.

From this decree the Indiana Match Company, Edward A. Biggs, Edmund S. Carr and Martin Collins, jointly and severally, prayed an appeal; but an appeal was perfected only by the Indiana Match Company. This brought into this court the Indiana Match Company as appellant, and Alice Leavitt Barrell Kirk, Mayer Louer and Edmund S. Carr, who alone take any benefit from the decree, as appellees. Each of these appellees has appeared and filed a brief herein, and Carr has assigned cross-errors.

The principal questions in the cause are raised by the assignments of the Indiana Match Company, which are based chiefly on the propositions that the chancellor in the Superior Court erred in admitting secondary evidence of the contents of the assignment from Edgar W. Kirk to Alice L. B. Kirk, and holding that said assignment was proven in the cause; and erred in not finding and holding that said assignment to her had not been cancelled, revoked or abrogated; and erred in holding that, in any event, the assignment to Alice L. B. Kirk was, under the circumstances disclosed by the evidence, superior to or entitled to

priority over the assignment to the Indiana Match Company. The assignment of errors also questions the holding that the claims of Louer and Carr were superior to that of the said company.

The cross-errors assigned by Carr are that the court erred in holding that the transaction between Edgar W. Kirk and Carr was usurious, and in refusing to allow Carr a further sum of $100, and also erred in holding that the assignment from Edgar W. Kirk to Alice L. B. Kirk had not been cancelled and annulled, and that she was entitled to have paid to her the moneys awarded her.

JAMES H. ROBERTS and MORRIS ST. P. THOMAS, for appellant.

ALBERT N. and EDWARD P. EASTMAN, JULIUS STERN and F. M. WILLIAMS and WILLIAM R. PAYNE, for appellees.

MR. JUSTICE BROWN delivered the opinion of the court.

To dispose first of the cross-errors assigned by the appellee Carr in this appeal, it is sufficient to say that the only alleged errors which could affect the decree, so far as Carr is concerned, viz., that the Superior Court erred in holding the transaction between Kirk and himself usurious, and in refusing to allow him $100 for services in making the loan to Kirk, are waived by not being argued or insisted on in this court. But there is nothing in the record which seems to us to sustain them. His remaining assignments are identical with some of those of the Indiana Match Company, and can be considered therewith. They involve the matter of the alleged cancellation of Mrs. Kirk's assignment, and of her right to the priority she was given.

The Indiana Match Company raises, by its assignments of error and its argument, in addition to these questions, one of the improper admission of secondary evidence to prove the assignment to Mrs. Kirk. We have carefully examined the evidence in this regard, and think that the chancellor was right in holding that sufficient foundation was found in the testimony offered on behalf of Mrs. Kirk concerning

the loss of the original paper, to entitle her to furnish this secondary evidence. But it is not, in our view, worth while to discuss this proposition with reference to the objections made to it in the able argument of the counsel for appellant, for there can be no escape from the conclusion that all such objections are futile in consideration of the fact that in behalf of their client, they themselves proved, without objection, the execution and contents of the assignment in question to Mrs. Kirk. ".I recall the fact," says Edgar W. Kirk in his deposition, taken and offered on behalf of the appellant, " of having executed and delivered to her an assignment dated March 16, 1900, of an interest in my distributive share of my mother's estate, a copy of which is set out in her answer." Counsel for appellant insist that as the trial court had already admitted—in their view erroneously—secondary evidence of the contents of this instrument, before they undertook to prove the alleged subsequent cancellation or abrogation of it, the error in admitting that evidence, if it were an error, should still be available to them. To prove that the paper had once existed, was the only prudent course for them under the circumstances, they say, but the only effect of the whole deposition, by which they made that proof, was to show that the copy of it which Mrs. Kirk had produced as a true one, was not correct, in that it did not bear on its face certain words of cancellation. This argument is not convincing. It was undoubtedly the only prudent course for counsel to adopt to make the proof in question, but having chosen that course they must abide by its legitimate results. To prove the subsequent cancellation of a paper, it is necessary to prove its existence, but the court cannot, after such proof is made, shut its eyes to the fact thus admitted, because it was not proven by the party on whom the burden first rested. Nor would justice be thereby secured. The burden of proof did indeed rest on Mrs. Kirk in the first instance, to establish her assignment, but justice required that if it had an existence uncancelled at sometime precedent to the appellant's assignment, that fact should come to the knowledge

of the court. The rules concerning the burden of proof, necessary as they are to the orderly administration of justice, do not find their justification in any purpose of the law or of courts to keep unproven that which is true and material, although sometimes through the natural imperfection of all human institutions they may work that result. When once the precedent existence of Mrs. Kirk's assignment was by any means established, the burden naturally and properly fell on the appellant to prove that cancellation or abrogation of it which was asserted by it and denied by her. This burden the appellant undertook, and it claims that it has successfully carried it. Before discussing this question, however, we shall consider briefly the proposition advanced by the appellant's counsel, that without reference to such alleged cancellation, the assignment to appellant should be held as giving equities in the fund involved, superior to those given by that of Mrs. Kirk.

The general rule, *qui potior in tempore potior in jure*, they argue has but a limited application in equity, and they say that priority of time should be as a ground of preference last resorted to. Only in case the court should find the equities of Mrs. Kirk and appellant equal, it is urged, should the priority in delivery of her assignment be allowed to have weight. Counsel disclaim, in their reply brief, any reliance on an equitable estoppel, although their sixth assignment of error claims such estoppel.

It is conceded that in furnishing the goods on which its claim is based, appellant was not influenced by any act or representation of Mrs. Kirk, and that she is not by any conduct on her part in equity precluded from asserting her claim as against appellant. But it is said she was a volunteer who parted with nothing on receiving her assignment, while appellant gave up its goods on the faith of the one made to it; that she did not record her assignment in the Probate Court, while appellant took that precaution; that she surrendered the evidence of her assignment soon after she received it, and at the same time requested the executors to disregard it to the extent of half at least of the fund

covered by it; and that in connection with dealings of her husband with others than appellant, between the date of her assignment and of appellant's, she was not vigilant in the assertion of her rights, while appellant has in no respect slept upon or conceded any of its. For all these reasons it is argued that her equities are not equal to those of the appellant, and that priority of time in her assignment should not be allowed a controlling influence. We do not agree with this position. It is true that in equitable claims on a fund, stronger equities may overcome the advantage given by priority of time, but they must be really and substantially stronger, their superiority being based on solid legal grounds—not fancied or sentimental ones. Counsel have cited to their point that priority of time is the ground of preference to be last resorted to, the opinion of Vice Chancellor Sir Richard Kindersley in Rice.v. Rice, 2 Drewey 73, quoted by Pomeroy in his work on Equity Jurisprudence in section 414. In a note to a subsequent section, 708, Mr. Pomeroy, as we understand him, declares the language of the Vice Chancellor in Rice v. Rice too strong. However this may be, our Supreme Court and this court are committed to the rule that "Each successive assignee of a chose in action takes it subject to the existing equities between the original assignor and his immediate assignee." Commercial National Bank v. Burch, 141 Ill. 519, 529; Luecbt v. Pearson, 101 Ill. App. 236. This priority in time is fortified in the matter now under discussion, by the fact that while the assignment to Mrs. Kirk is by its terms of $10,000 of the assignor's interest in his mother's estate, that to the Indiana Match Company by *its* terms is of "the remaining unassigned part" of such interest, a difference not to be considered without significance when giving effect to these successive assignments.

Appellant probably would contend that the affidavit made and delivered with its assignment must be considered with it, and makes the assignment amount to a conveyance, not merely of the surplus over Alice L. B. Kirk's interest, but to a reconveyance of that interest. This may be doubt-

ful, but even so considering it, the grounds urged by appellant are not sufficient to overcome the greater equity resulting from priority of time.

Mrs. Kirk's conduct and conversation with others not connected with the Indiana Match Company, of which it does not appear even that the Indiana Match Company was ever apprised, cannot affect her rights against that company. A want of vigilance, as against that company, and by which that company was misled or lulled into security, is the only want of vigilance with which we are concerned here. The failure to record her assignment in the Probate Court was not such want of vigilance, for in the absence of any legal duty so to do, it is hard to see how there could be any social or moral obligation to such action. It was, perhaps, more notice to the general public to record an assignment as Mrs. Kirk did, in the recorder's office, than to record it by filing it in the Probate Court. Neither would be efficient to constitute constructive notice, and either would show that no concealment or unfairness was contemplated. To file it in the Probate Court might be the more effective way to protect the rights of the assignee against possible mistake or mischance, but for the purpose of constituting a stronger equity it is no better than to leave it at the recorder's office. Nor does the fact that Mrs. Kirk gave up the written evidence of her assignment to the executors, among whose papers indeed, rather than with the recorder or the clerk of the Probate Court, was the proper place for its filing—the place where subsequent assignees would most naturally look for it—to be imputed to her as want of vigilance. Nor can we think that because while living with her husband, she assented to waive, for the purpose of allowing a partial payment to him, the strict enforcement of her rights under the assignment, she should be prevented from asserting them against those with whom she entertained no relations, and of whom she had no knowledge.

The strongest apparent ground, perhaps, for asserting a stronger equity in the appellant than in Mrs. Kirk, is that the assignment to Mrs. Kirk is expressed to be for no other

consideration than one dollar and love and affection, and that to the appellant was practically for valuable merchandise. But even this is but an apparent ground of a difference in equities, not a real one. If Alice L. B. Kirk had not been the wife of the assignor, it might have weight, but it is the settled law of this State that an existing marriage relation is a valuable and sufficient consideration to support a conveyance or settlement by a husband on his wife, if it does not affect the claims of creditors existing at the time of the said conveyance or settlement. Sanford v. Tinkle, 112 Ill. 146, 151. The consideration being, in the eye of the law, valuable and sufficient to sustain the assignment in each case, there is no reason why the one should be esteemed by the court to be based on a better consideration than the other. Even if there were, there might be doubt which involved the stronger equity, in view of what this record shows of the subsequent conduct and situation of the parties.

The only remaining ground of objection to the decree is the one most strenuously argued and insisted on by appellant, and before alluded to. It is that the evidence showed, and the court should have held, that the assignment to Mrs. Kirk had been cancelled and abrogated by a writing over its face, signed by Mrs. Kirk and by her husband, at a date long before the assignment to appellant was made.

The evidence on this matter is in direct conflict. Edgar W. Kirk testified directly to the cancellation in the office of Mr. Muhlke, the lawyer for the executors—stating that to the best of his recollection, the words, "This contract is hereby void," were written by Mr. Muhlke and then signed by Mrs. Kirk and himself. He is contradicted directly by Mrs. Kirk and by Mr. Muhlke. The case was once closed below without Mr. Kirk's testimony, and then opened that it might be taken. It is to be remembered that the burden of proof to establish this cancellation is upon the appellant. As we have said, it claims that it has successfully carried this burden. If the direct testimony of Edgar W. Kirk is sufficient to this end, such might well be considered the fact,

for Mr. Kirk testifies positively and in detail. But, although counsel remind us that the testimony of Mr. Kirk was offered to the court below as it appears here, in writing, and without his personal presence, such is not the case with that of the witnesses who directly contradict him. They were seen and heard by the chancellor, who, therefore, had better means than we of judging of the weight to be given to their assertions. There were certainly reasons, moreover, which did not require the presence of Mr. Kirk before the court, for receiving his testimony on this point with great caution. Two affidavits appear in the record, which were made by him under circumstances where every consideration would make any man naturally truthful and honest, extremely scrupulous in what he said—which are, it is admitted, wilfully and knowingly false. Such affidavits were doubtless to the chancellor, and cannot but be to us, extremely bad introductions to the deposition which forms the backbone, so to speak, of appellant's case. The deposition *may* be true, but for obvious reasons, Mr. Kirk cannot be considered entirely disinterested in sustaining appellant's claim to payment of its just demands against him, which accrued through barefaced falsehood under oath on his part. No innocent meaning can be given these affidavits, for they were not made, as the record shows, when the affiant supposed that Mrs. Kirk had abandoned all claim under the assignment made to her, but with full notice that whatever the fact was, she was claiming under said assignment, and yet, with the utmost particularity, Edgar W. Kirk swore that he had never made the assignment, which at the very beginning of his deposition he swears he did make and deliver to her. That his evidence as to the subsequent abrogation of it was not deemed by the chancellor sufficient to overthrow Mrs. Kirk's case, is not a matter of wonder.

It is urged, however, that various circumstances in the evidence, grouped and insisted on in appellant's brief, and in that of the appellee, Carr, corroborate Edgar W. Kirk's story, and should be held to sustain it, even if he otherwise

might be discredited. These matters have been forcibly and ingeniously argued by counsel, but it would extend this opinion unwarrantably and serve no good purpose for the court to discuss them. We have endeavored to give them all their due weight, and they fail, singly or in conjunction, to convince us of anything more than the conceded fact that some modification of the assignment to be thereafter made had been practically agreed on, at about the time it was carried to record or taken from the record. They fail to make inevitable the conclusion that Edgar W. Kirk is telling the truth when he says that the assignment was abrogated, in writing, on its face, or even to make that the more probable theory to our minds. Perhaps the strongest of them all is the fact that the assignment was taken from the record office on May 7, 1900, and that the first of the monthly payments made to Edgar W. Kirk was, it would appear from the date of the receipt, made on May 5th. But proof that Edgar was right and his wife wrong about material facts, even of the story concerning their visit to Hartland, the payments to Edgar, and other matters connected with the assignment, would not establish Edgar's truthfulness as to the vital point on which the appellant's case hinges, and on which he is directly contradicted by Muhlke as well as Mrs. Kirk. There was a conversation at the Northwestern Station between Mrs. Kirk and James A. Kirk several days before the visit to Hartland, so Mrs. Kirk says, and a call upon Mr. Muhlke and at the office of John B. Kirk. It is possible that before the visit to Hartland, even if Mrs. Kirk's story is entirely accurate, an arrangement for the payment of $750 to Edgar might have been made, leaving details for future settlement. It is possible that a receipt might be wrongly dated. In other words, the argument from the supposed discrepancy between the documentary evidence and Mrs. Kirk's testimony, is not conclusive, even of her inaccuracy, much less of Edgar's truthfulness. On the other hand, in his letters introduced in evidence and in the admissions sworn to by the Eastmans, as made to them by him, there are things wholly inconsistent with the statements of his deposition.

.Indiana Match Co. v. Kirk.

If an argument can be drawn from the executor's payment of money to Edgar that the assignment to Mrs. Kirk had been to their knowledge cancelled, another can be drawn from Mrs. Kirk's conceded expectation that she was to have the proceeds of the real estate secured to her in return for the money she allowed her husband to have that she would not have cancelled the original assignment until papers evidencing such new agreement were put into her hands.

We cannot, on the whole, see any justification for disturbing the decree of the chancellor in the Superior Court. The errors assigned upon the condition of the bond, we do not consider well taken. Whether the condition made for the appeal was proper or not, it does not seem to us the objection can be urged here. It was waived, so far as this cause and court go, when the condition was acceded to by the appellant and the bond filed and appeal taken. Nor do we think the additional assignment of error on the allowance of interest on the claim of Carr is available to appellant, even if the point be well taken. To sustain it would only increase the amount to be paid Alice L. B. Kirk. It would give nothing to appellant, and the error, if it be one, is not prejudicial to it. No one else is complaining of it.

The decree of the Superior Court is affirmed.

*Affirmed.*